UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dolores Chivers and<br>Chestine Clay, | Civil No. 08-5281 (DWF/AJB) |
| Plaintiffs, | |
| v. | MEMORANDUM<br>OPINION AND ORDER |
| Wal-Mart Stores, Inc., d/b/a<br>Wal-Mart and Wal-Mart Associates, Inc., | |
| Defendant. | |

_____

Andrea F. Rubenstein, Esq., and Lawrence P. Schaefer, Esq., Schaefer Law Firm, LLC.

Stephanie D. Sarantopoulos, Esq., and G. Abam Mambo, Esq., Littler Mendelson, PC.
_____

## INTRODUCTION

This matter is before the Court pursuant to a Motion for Summary Judgment brought by Defendants Wal-Mart Stores, Inc., d/b/a Wal-Mart and Wal-Mart Associates, Inc. ("Wal-Mart"). For the reasons stated below, Wal-Mart's Motion for Summary Judgment is granted.

## BACKGROUND

Plaintiffs Dolores Chivers and Chestine Clay have sued their former employer, Wal-Mart, alleging discrimination and retaliation based on their race and gender in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 2; Minn. Stat. § 363A.15.

Chivers applied for employment at Wal-Mart in April 2003. At that time, Julie Blake, a Wal-Mart personnel manager, suggested that Chivers apply for Wal-Mart's Management Training Program ("MTP"). (Aff. of Andrea F. Rubenstein ("Rubenstein Aff.") ¶ 2 and Aff. of Stephanie D. Sarantopoulos ¶ 2, Ex. 1 (Depo. of Dolores L. Chivers ("Chivers Depo.")) at 74, 80-84, 131; Aff. of Dolores L. Chivers ("Chivers Aff.") ¶¶ 2, 3.) Blake indicated that Chivers was eligible for the MTP because she had a four-year college degree in a business-related major and past retail experience. (Chivers Aff. ¶ 3.) On Blake's suggestion, Chivers faxed her resume to Dennis Davis, the District Director. Chivers asserts that Davis ignored her efforts to speak with him about the MTP for several months. (Chivers Depo. at 121; Chivers Aff. ¶¶ 1, 4.) Chivers told Blake in late April 2003 that she had not been selected for the MTP. Blake suggested that Chivers begin working at the Bloomington, Minnesota, Wal-Mart. (Chivers Depo. at 84.) In May 2003, Chivers accepted a position as a member of the Inventory Control Stock ("ICS") team as a Specialist. (*Id*. at 85-86, 114.) As a Specialist in the ICS team, Chivers was responsible for organizing and controlling inventory. (*Id*. at 114 & Ex. 8.)

Chivers asserts that during her employment at Wal-Mart, she repeatedly applied to the MTP but was never selected for the program. Wal-Mart's "Promotion and Demotion Criteria" sets forth the minimum requirements to apply for the MTP. (Rubenstein Aff. ¶ 6, Ex. E-1.) An hourly associate moving to the MTP must: (1) have a minimal evaluation rating of "meets expectations"; (2) have been in their current position for six

2

months; (3) have one year of retail experience with Wal-Mart of prior employer; and (4) no active written coaching.[1] (*Id.*)

In October 2003, Chivers applied for an open position in the MTP, but she was not selected to interview.[2] (*Id.* at 132-35.) Chivers asked Davis why she was not selected. Davis encouraged Chivers to acquire department management experience from within the store, show initiative by taking on extra work, and to join a committee. (*Id.* at 135-36, 139.) Chivers asserts that in September of 2006 she was again denied admittance into the MTP by a district director who indicated that Chivers needed to demonstrate leadership. (Chivers Aff. ¶ 10.) Chivers asserts that she received conflicting advice on how to position herself so as to be accepted in the MTP.

In March 2007, Chivers applied to the MTP again. (Chivers Depo. at 175.) This time, Chivers applied on-line due to a change in the way Wal-Mart received applications to the MTP. (*Id.* at 174-75; Chivers Aff. ¶ 11.) Chivers was selected to interview for positions at several stores in Minnesota, including stores in Red Wing, Motevideo, Cambridge, and "one or two other stores." (*Id.* at 175-76.) Chivers was offered a position at the Montevideo store and two other stores. (*Id.* at 175-76; Chivers Aff. ¶ 18.) Chivers declined the offers because it was too expensive for her to commute to these

---

[1] Minor violations of Wal-Mart policy warrant a "verbal coaching." More serious offenses warrant a "written coaching."

[2] Chivers contends that Davis waived the requirement that she be in her current position for six months to allow her to apply to the MTP. (*Id.* at 132.)

stores, and Wal-Mart would not pay for her to relocate. (*Id*. at 176-78, 210; Chivers Aff. ¶ 19.)

In 2007, Chivers began to pursue a discrimination claim against Wal-Mart. Counsel for Chivers notified Wal-Mart of Chivers' claim in June 2007.

In 2008, Wal-Mart notified its Bloomington store associates, including Chivers, that the Bloomington store would be closing for remodeling. Chivers interviewed for, but was not offered, positions at other stores. Chivers was offered a severance package but declined to take it. (*Id*. at 211, 324.)

Chestine Clay began working for Wal-Mart in Aberdeen, Mississippi, in April 2002. In February 2003, Clay was accepted into the MTP. (Sarantopoulos Aff. ¶¶ 3, 4, Exs. 2, 3 and Rubenstein Aff. ¶ 3, Ex. B (Depo. of Chestine Clay ("Clay Depo.")) at 72-73, 81-83.) After completing the MTP, Clay was assigned to the Columbus, Mississippi, store as a management trainee. (*Id*. at 83-85.) In August 2003, Clay was promoted to Assistant Manager and transferred to the Fridley, Minnesota, Wal-Mart, as the Assistant Manager. (*Id*. at 86-87.) In 2005, Clay applied for and was granted a transfer to the Bloomington store, where she began working as the manager of the Vision Center. (Clay Depo. at 90-91; Affidavit of Chestine Clay ("Clay Aff.") ¶ 3.) Clay was responsible for the overall operation of the Vision Center, including budget, inventory, and personnel responsibilities. (Clay Depo. at 107.) Clay reported to Becky Fritz, the District Vision Center Manager. (*Id*. at 107, 122.) Bloomington Store Manager, Curtis Knipp, oversaw

4

operation for the Bloomington store, but he did not directly oversee the Vision Center. (*Id.* at 107; Sarantopoulos Aff. ¶ 5, Ex. 4 (Depo. of Curtis Knipp ("Knipp Depo.")) at 9.)

While working at the Bloomington store, Clay complained that she was being discriminated against because of her race and gender. In particular, Clay asserts that an associate refused to process Vision Center damaged merchandise claims "in a very mean, nasty tone." (*Id.* at 127.) In addition, Clay asserts that an Assistant Manager did not allow Clay to retrieve documents from the office printer.[3] (*Id.* at 102-03.) Clay complained about perceived racial discrimination to a store manager in Fridley. (*Id.* at 133-34.) District Manager Davis spoke to Clay about these incidents, investigated, and concluded that no racial discrimination occurred. (*Id.* at 140.)

In July 2006, Deb Thoennes became Clay's new supervisor. Clay complained to Thoennes about the two employees who Clay alleged discriminated against because of her race and gender. On August 22, 2006, Clay contacted Thoennes to lodge a formal discrimination complaint against the two employees. On August 28, 2006, Thoennes and a human resources representative met with Clay. During the meeting, Clay received a written disciplinary warning related to complaints received regarding Clay's customer service and management style. The next day, on August 29, 2006, Clay telephoned Charlene Munson, a Vision Center optician, at her home. (*Id.* at 213; Sarantopoulos Aff.

---

[3] In her deposition, Clay discusses instances where she believes she encountered discrimination in Mississippi and Fridley, Minnesota. Clay, however, limits her legal claims in this action to events that occurred in the Bloomington store. (Clay Aff. ¶ 4.) Accordingly, the Court limits its discussion to those events.

¶ 6, Ex. 5 (Depo. of Charlene Munson ("Munson Depo.")) at 26-27.) The parties dispute the nature of the call. Wal-Mart asserts that the call was work-related. Clay asserts the call was personal, but she acknowledges that at least a portion of the call was spent discussing work issues. (Clay Depo. at 215-218, 223, 234-36; Munson Depo. at 26-28.) Munson was subordinate to Clay. Clay did not tell Munson to record her time for the call or offer to pay Munson. After the call, Knipp visited the Vision Center and learned about the call. Knipp asked Munson to write a statement about the call. (Munson Depo. at 24 & Ex. 2.) In the statement, Munson asserts that Clay called her to discuss work-related issues at the Vision Center. Wal-Mart investigated Munson's assertions. As part of the investigation, Wal-Mart reviewed messages left by Clay on Munson's voice mail. Clay left a series of messages on Munson's phone after the August 26 phone call, during which Clay indicated that she recalled the August 26 phone call to be personal and only ten minutes long. (Clay Depo. at 218-20; Munson Depo. at 37, Ex. 4.) On September 6, 2006, Clay learned that she was being terminated for violating Wal-Mart's "off-the-clock" policy.[4] (Clay Depo. at 228-29, Ex. 30.)

---

[4] Wal-Mart has a policy prohibiting Associates from working "off-the-clock" and requiring payment for all hours worked. (Clay Depo. at 67-68 & Ex. 10.) It is a violation for a manager to ask an associate to work off-the-clock. (*Id*.) When a violation of this policy is reported, Wal-Mart conducts an investigation. Disciplinary action, up to an including termination, may result if a violation is found. (*Id*.)

On August 29, 2008, Plaintiffs brought an action against Wal-Mart in Minnesota state court. Wal-Mart removed the case to this Court. In their Complaint, both Plaintiffs allege discrimination and reprisal under the MHRA.[5]

## DISCUSSION

**I.    Legal Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary

---

[5]    Clay agreed to dismiss her overtime wage claims. Accordingly, Counts Three and Four are dismissed.

judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Gender and Race Discrimination Under the MHRA

Both Chivers and Clay allege that they were discriminated against on the basis of their gender and race in violation of the MHRA. The parties agree that the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to the determination of whether Wal-Mart is entitled to summary judgment on Plaintiffs' claims. *See Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003) (explaining that the elements and analysis of discrimination under Title VII and the MHRA are the same). Under the *McDonnell Douglas* framework, if a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Wells v. SCI Mgmnt., L.P.*, 469 F.3d 697, 701 (8th Cir. 2006) (analyzing claims under Title VII and the Missouri Human Rights Act). If the employer is able to articulate such a reason, the burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id*.

In order to establish a *prima facie* case of gender or race discrimination, each Plaintiff must demonstrate (1) that she is a member of a protected group; (2) that she was qualified for her job; (3) that she suffered an adverse employment action; and (4) circumstances exist which create an inference of discrimination. *Id*. The fourth

8

element can be met by demonstrating that similarly-situated employees of the opposite sex or a different race were treated differently. *Id*.

### A. Dolores Chivers

Chivers bases her claims of discrimination on the allegation that she was denied promotional opportunities on the basis of her dual protected status as an African-American woman. Wal-Mart asserts that Chivers cannot establish a *prima facie* case of discrimination because she fails to point to evidence permitting an inference of discrimination and, in particular, that she cannot show similarly-situated non-African-American or male employees were promoted into the positions she sought.

The parties' main dispute is with respect to the fourth element of Chivers' *prima facie* case. Chivers asserts that her multiple unsuccessful attempts to apply for and be admitted to the MTP demonstrate racial and gender discrimination. Chivers claims that prior to 2007, the district manager could arbitrarily choose who to interview for the MTP based on subjective factors and that her inability to secure an interview demonstrates discriminatory intent. In addition, Chivers asserts that the interviews and offers that she received for the MTP in 2007 were "shams" because the offers were for stores other than the Bloomington store and that she could not afford to relocate to accept the jobs.

The Court finds Chivers' evidence insufficient to establish an inference of discrimination. While Chivers claims that she was denied promotions despite "continuous and constant" MTP opportunities, she fails to point to record evidence of any specific instance where a similarly-situated applicant outside of her protected class was

promoted instead of her. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002) (explaining that discrete acts of discrimination, including failure to promote, are easy to identify and constitute a separate actionable practice). This failure to point to a specific instance where she was not promoted for discriminatory reasons is fatal to her *prima facie* case, particularly because Chivers does not present other evidence sufficient to demonstrate an inference of discrimination.

Chivers asserts that she should have been selected for the MTP because she frequently applied and she met the basic qualifications. However, she does not submit evidence that she was the most qualified than or even similarly qualified to those selected. Chivers claims that it would be an impossible burden for her to demonstrate that she was similarly situated to all other applicants, but goes on to vaguely assert that she was more qualified than others who were selected for the MTP. For example, she claims that Wal-Mart selected recent college graduates with no retail experience and applicants with no supervisory experience for the MTP. While claiming, on the one hand, that she need not demonstrate that substantially similar applicants were treated differently—a point the Court agrees with so long as Chivers presents other evidence of discriminatory intent—Chivers, on the other hand, compares her lack of promotion to other Wal-Mart employees. Chivers cannot have it both ways. If Chivers is going to attempt to demonstrate an inference of discrimination based on a comparison to Wal-Mart's treatment of other applicants, then Chivers must demonstrate that those other applicants were similarly situated to her and, in particular, that opportunities were made available to

other persons with Chivers' qualifications. The record before the Court does not contain evidence that other similarly-situated applicants were given promotional opportunities that Chivers was denied. A reasonable fact-finder could not conclude that Wal-Mart's promotion of other applicants creates an inference of discrimination without evidence that those applicants were similarly situated to Chivers.

Moreover, Chivers does not submit evidence that race or gender influenced Wal-Mart's decision process. For example, while Chivers asserts that Davis did not respond to her MTP inquiries for several months in 2003, she does not provide any evidence that Davis' actions were motivated by Chivers' race or gender. The fact that Chivers was offered several MTP positions in 2007 further undermines her claims of discrimination. While Chivers asserts that the positions were sham offers, Chivers has submitted no evidence that Wal-Mart offered her those positions knowing that she would decline to take them. For the above reasons, Chivers has failed to submit evidence of circumstances which create an inference of discrimination. Accordingly, Chivers has not established a *prima facie* case of race or gender discrimination.

Even if Chivers could establish a *prima facie* case, Wal-Mart has offered a legitimate, nondiscriminatory reason for the actions it took with respect to Chivers' applications to be part of the MTP. Specifically, Wal-Mart contends that it did not initially select Chivers for the MTP because she lacked supervisory experience and that it was Chivers who declined the positions offered in 2007. Therefore, the presumption of discrimination disappears, and Chivers can avoid summary judgment only if the evidence

demonstrates that Wal-Mart's proffered reasons are a pretext for racial or gender discrimination. *See Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005) ("We have recognized that the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee . . . . [A plaintiff] is also required to show that circumstances permit a reasonable inference to be drawn that the real reason [for termination] was because of [] race.").

Chivers attempts to show pretext with evidence that Wal-Mart incorrectly claimed that management experience with Wal-Mart was a requirement for the MTP. The problem with Chivers' argument is that while supervisory experience was not a requirement for the MTP, Chivers has not put forth evidence that it was not a proper consideration for Wal-Mart to take into account when evaluating candidates. Moreover, for this evidence to suggest pretext, she would also have to put forth evidence that similarly-situated persons were treated differently. The test for determining if one is "similarly situated" at the pretext stage is "rigorous." *Wheeler v. Aventis Pharms*, 360 F.3d 853, 858 (8th Cir. 2004). For the reasons discussed above in the Court's analysis of Chivers' *prima facie* case, Chivers simply cannot demonstrate that she was similarly situated to any other applicants who received promotions.

In March 2007, Wal-Mart accepted Chivers' application to the MTP program and offered Chivers positions in three stores. Chivers claims that these stores were too far away for it to be practical for her to accept the jobs and the fact that she was only selected

for stores outside of the Bloomington area demonstrates pretext. The Court disagrees. Chivers has not put forth evidence that any decision-maker was motivated by discriminatory animus or that there were positions available closer to Bloomington that went to similarly-situated applicants. Moreover, there is no evidence that it was unusual for Wal-Mart to offer jobs to applicants that required relocation for which Wal-Mart would not pay.

Finally, Chivers argues that pretext is evidenced by the fact that Davis did not respond to her initial inquiries into the MTP in 2003 and that she did not receive an interview until the application process included on-line applications. Without more, the Court concludes that this evidence is insufficient to establish a triable issue of pretext because Chivers has failed to put forth evidence that Davis's decisions were based on discriminatory animus.

### B. Chestine Clay

Clay bases her claims of discrimination on the allegation that she was terminated on a trumped-up accusation regarding Wal-Mart's "off-the-clock" policy and that the real reason for her termination was based on her status as an African-American woman. Wal-Mart asserts that Clay cannot establish a *prima facie* case of discrimination because she fails to point to another member of Wal-Mart's management team outside of her protected class who was permitted to retain their job after engaging in a similar policy

13

violation and then attempting to influence the outcome of the subsequent investigation.[6] Clay asserts that she is not required to show that similarly-situated persons were treated differently to demonstrate an inference of discrimination. Here, Clay asserts that an inference of discrimination is possible on the facts here, namely that she was meeting her employer's reasonable expectations and because there was no known expectation that she would otherwise have been terminated until the offending phone call.

The Court agrees that Clay could satisfy her *prima facie* case of discrimination if she could show that her termination occurred in circumstances giving rise to an inference of discrimination. Here, however, the Court concludes that Clay has failed to show that such circumstances exist here. While Clay denies that she was engaged in "off-the-clock" work when she called Munson on the phone, Clay misunderstands the proper inquiry. The proper inquiry is whether Wal-Mart honestly believed that Clay violated the "off-the-clock" policy, not whether Wal-Mart was correct when it determined that she violated the policy. *See Johnson*, 422 F.3d at 763. Clay has not pointed to any evidence suggesting that Wal-Mart did not believe that Clay had violated the policy.[7] Moreover, Clay has not provided any evidence that race or gender were factors in her discharge. In sum, the Court finds Clay's evidence of discriminatory intent insufficient to establish an

---

[6] Wal-Mart does not dispute that Clay meets the first three requirements.

[7] The Court acknowledges that Wal-Mart's decision to terminate Clay in response to what appears to be a minor or technical violation of the "off-the-clock" policy seems overly harsh. However, there is no evidence that racial or gender discrimination was involved. The Court is not to "sit as a super-personnel department and second guess

(Footnote Continued on Next Page)

inference of discrimination and Clay thus has failed to establish a *prima facie* case of discrimination.

Even if Clay established a *prima facie* case, Wal-Mart has offered a legitimate, nondiscriminatory reason for the actions it took with respect to Clay's discharge—the violation of company policy. Therefore, any presumption of discrimination would disappear, and Clay must provide evidence demonstrating that Wal-Mart's proffered reasons are a pretext for racial or gender discrimination. *See Johnson*, 422 F.3d at 762. Clay attempts to show pretext by alleging that Wal-Mart's conclusion that the August 26 phone call was a work-related call that violated company policy was false and a "sham." Clay offers no evidence in support of this allegation and no other evidence that would demonstrate that Wal-Mart's proffered reason was a pretext for discrimination. Given this, Clay's discrimination claim fails.

## III. Retaliation

Both Plaintiffs assert claims of retaliatory-discharge. In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in statutorily-protected conduct; (2) an adverse employment action was taken; and (3) a causal connection exists between the two. *Wells,* 469 F.3d at 702; *Basset v. City of Minneapolis*, 211 F.3d 1097, 1104-1105 (8th Cir. 2000). If a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to show a legitimate,

---

(Footnote Continued From Previous Page)
buisiness decisions." *See Lewis v. St. Cloud Univ.*, 467 F.3d 1133, 1137 (8th Cir. 2006).

nondiscriminatory reason for its action. Then, the plaintiff must establish that the proffered nondiscriminatory reason was mere pretext for retaliation.

### A. Dolores Chivers

In her Complaint, Chivers alleges that in June 2007, she notified Wal-Mart of her intent to file a discrimination charge because of a lack of equal promotional opportunity. Chivers also alleges that after she gave notice, she began to receive interviews for entry into the MTP and that she received subsequent "sham" job offers. Chivers asserts that the offers are proof of retaliation.

This claim cannot survive summary judgment. First, Chivers does not present evidence that any decision-maker with respect to Chivers' promotions knew of Chivers' intent to file a discrimination claim. Second, Chivers submits no evidence to support her allegation that the 2007 job offers were shams, and therefore those offers cannot be considered adverse employment actions. Chivers asserts that the offers must be shams because she could not afford to relocate. Chivers does not, however, offer any evidence that the offers were made in bad faith, in retaliation for her discrimination claim, or that it was unusual for Wal-Mart to offer applicants jobs at various geographical locations.

### B. Chestine Clay

Clay asserts that the timing between her internal complaint of discrimination and her termination demonstrates retaliatory motive on Wal-Mart's part. On August 22, 2006, Clay contacted her supervisor to make a formal discrimination complaint against the two employees who Clay asserts were hostile to her. On August 28, 2006, Clay received a

written disciplinary warning. On August 29, 2006, Clay made a phone call to Munson that Wal-Mart contends violated its "off-the-clock" policy. On September 6, 2006, Clay was terminated.

Clay asserts that she was terminated in retaliation for making the discrimination complaint. In support, Clay asserts that she was not terminated for violating company policy because the phone call was not a violation of the "off-the-clock" policy. Instead, Chivers asserts that the phone call was personal and that a credibility determination is necessary to conclude otherwise.

While Clay's termination came soon after her August 2006 discrimination complaint, that temporal nexus is interrupted by the August 29, 2006 phone call that Wal-Mart concluded was a violation of the "off-the-clock" policy. Moreover, during its investigation into the call, Wal-Mart discovered that Clay left several messages for Munson regarding the nature of the August 26 call and contends that Clay attempted to influence the investigation. Clay's retaliation claim fails because, on the record before the Court, Clay cannot establish a causal link between her discrimination complaint and her termination. Moreover, even if Clay could establish a *prima facie* case of retaliation, Wal-Mart has proffered a legitimate reason for her termination (the violation of company policy) and Clay has not established a triable issue that the reason for her termination was a pretext for retaliation.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Wal-Mart's Motion for Summary Judgment (Doc. No. [13]) is **GRANTED** in its entirety.

2. Plaintiffs' Complaint is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  May 19, 2010               s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge